UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ORLEY CORTES FRANCO,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No.: 8:20-cv-2822-T-27JSS
Criminal Case No.: 8:16-cr-407-T-27JSS

_____/

## ORDER

**BEFORE THE COURT** are Petitioner Franco's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (cv Dkt. 1), his Memorandum in Support (cv Dkt. 2), and the United States' Response in Opposition (cv Dkt. 6). Upon review, Franco's § 2255 motion is **DENIED**.

### BACKGROUND

In 2016, Franco was indicted and charged with conspiring to possess with the intent to distribute and to distribute five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii) (Count One), and possession with the intent to distribute five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii) (Count Two). (cr Dkt. 1). He pleaded guilty to Count One pursuant to a written plea agreement, and Count Two was dismissed. (cr Dkt. 38 at 1, 3); (cr Dkt. 78 at 2).

1

The plea agreement's factual basis, as stipulated to by Franco during his change of plea hearing, reflected that he and two codefendants were found in international waters in a vessel carrying more than five kilograms of cocaine. (cr Dkt. 38 at 18). Although a claim of Colombian nationality was made for the vessel, the Colombian government could neither confirm nor deny the nationality of the vessel. (Id.); *see also* (cr Dkt. 33).

During his change of plea hearing, Franco confirmed that an interpreter assisted him in communicating with counsel, that the charges were translated for him and he fully understood them, and that he had an opportunity to review the case and evidence with counsel. (cr Dkt. 109 at 7-8, 12-13). He expressed satisfaction with counsel's representation. (Id. at 12-13). He further understood the penalties he faced, that the sentencing guidelines were advisory, that the plea agreement's provision relating to substantial assistance did not bind the Court, and that by pleading guilty he was waiving certain rights, including his right to a jury trial and, subject to limited exceptions, file an appeal.[1] (Id. at 14-25, 28-30). His guilty plea was accepted as entered knowingly and voluntarily, and he was adjudicated guilty. (Id. at 35-36); (cr Dkts. 44, 56).

With a three-level reduction for acceptance of responsibility and a two-level reduction under U.S.S.G. §2D1.1(b)(17), Franco's offense level was 33. (cr Dkt. 69 ¶¶ 21-31). With a criminal history category I, his guidelines range was 135 to 168 months imprisonment. (Id. ¶ 70).

---

[1] As provided in his plea agreement, Franco waived the right to appeal his sentence

> on any ground, including the ground that the Court erred in determining the applicable guidelines range . . . except (a) the ground that the sentence exceeds [his] applicable guidelines range *as determined by the Court* . . . ; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution . . . .

(cr Dkt. 38 at 15-16 (emphasis in original)).

2

The United States' motion for a two-level downward departure based on Franco's substantial assistance was granted, which reduced his guidelines range to 108 to 135 months. (cr Dkts. 71, 80); (cv Dkt. 6-2 at 21). He was sentenced to 108 months, followed by 5 years of supervised release. (cv Dkt. 6-2 at 23). Judgment was entered on March 22, 2017, and an amended judgment was entered on March 28, 2017. (cr Dkts. 81, 89). Franco did not file an appeal.

On November 24, 2020, Franco filed his § 2255 motion in which he raises claims relating to jurisdiction, his guilty plea, and ineffective assistance of counsel.[2] (cv Dkt. 1 at 4-5, 12). As the United States correctly contends, Franco's claims are untimely and without merit. (cv Dkt. 6).[3]

## STANDARD

To establish ineffective assistance of counsel, Franco must demonstrate that (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The *Strickland* test also applies to challenges of guilty pleas. *See Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009). The Eleventh Circuit explains:

> In this context, the first prong of *Strickland* requires the defendant to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal

---

[2] A *pro se* prisoner's pleading is deemed filed on the date the prisoner delivers the pleading to prison authorities for mailing. *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Inconsistent with his motion, he affirms in his memorandum that he "deposit[ed] a copy of this motion in the prison mail box system" on November 25, 2020. (cv Dkt. 2 at 9). Using either date, his claims are untimely.

[3] No evidentiary hearing is required because the § 2255 motion "and the files and records of the case conclusively show that [Franco] is entitled to no relief." 28 U.S.C. § 2255(b).

3

cases. The second prong focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process, meaning the defendant must show a reasonable probability that, but for counsel's errors, he would have entered a different plea.

*Id.* (internal quotation marks and citations omitted); *Lafler v. Cooper*, 566 U.S. 156 (2012).

Notably, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial," and "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel must make an "independent examination of the facts, circumstances, pleadings and laws involved, [and] offer his informed opinion as to the best course to be followed in protecting the interests of his client." *Id.* Collateral relief is only available if a petitioner "prove[s] serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Lopez v. Reid*, No. 2:14-cv-584-FtM-38MRM, 2017 WL 2869405, at *2 (M.D. Fla. July 5, 2017) (quoting *McMann v. Richardson*, 397 U.S. 759, 774 (1970)).

## DISCUSSION

In summary, Franco's claims are untimely, and he does not allege any facts that support a finding of equitable tolling. His claims are also without merit. Specifically, this Court had jurisdiction over his offense. Further, absent deficient performance and prejudice resulting from the claimed deficient performance, his ineffective assistance of counsel claims fail. Last, to the extent he challenges the validity of his guilty plea, the record, specifically his change of plea hearing, reflects that he entered his guilty plea knowingly and voluntarily. Accordingly, he is not entitled to relief.

4

*Timeliness*

The Antiterrorism and Effective Death Penalty Act imposes a one-year limitation period to file a § 2255 motion, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Franco did not file his motion within one year of when his judgment of conviction became final, and he does not contend that the limitation period began to run on a later date under § 2255(f).[4] Accordingly, absent a basis to toll the limitation period, Franco's claims, including his jurisdictional challenge, are untimely. *See Williams v. United States*, 383 F. App'x

---

[4] Franco's judgment of conviction became final when his time to file an appeal passed. (cr Dkt. 89); *see Akins v. United States*, 204 F.3d. 1086, 1089 n.1 (11th Cir. 2000). Even assuming he had 14 days from entry of the amended judgment to appeal, he placed his § 2255 motion in the prison mailing system on November 24, 2020, more than three years after that date. (cv Dkt. 1 at 12); *see Rojas v. United States*, No. 07-80161-Cr, 2011 WL 1467008, at *2-3 (S.D. Fla. Mar. 21, 2011), *report and recommendation adopted*, 2011 WL 1467226 (S.D. Fla. Apr. 18, 2011) (collecting cases for proposition that an amended judgment which corrects clerical error does not restart limitation period).

To the extent Franco claims that counsel failed to file a notice of appeal, the Eleventh Circuit has instructed that a claim "based on counsel's failure to file a requested direct appeal is considered timely under § 2255(f)(4) if the movant files within one year of discovering, through the exercise of due diligence, that counsel did not file the requested appeal." *Long v. United States*, 626 F.3d 1167, 1169 (11th Cir. 2010). If a petitioner was not diligent, courts must "speculate about the date on which the facts could have been discovered with the exercise of due diligence." *Aron v. United States*, 291 F.3d 708, 711 n.1 (11th Cir. 2002). Here, Franco should have known immediately that no appeal had been filed since the record reflects that none had been requested. In any event, at sentencing he was advised that he had 14 days to appeal, and had he exercised due diligence, he would have discovered that an appeal had not been filed within a few months following the deadline to file a timely notice. *See, e.g., Russaw v. United States*, No. 2:16-cv-8146-RDP, 2018 WL 2337301, at *4 (S.D. Ala. May 23, 2018); *Rubiano v. United States*, No. 6:16-cv-785-Orl-37DCI, 2017 WL 1653719, at * 3 (M.D. Fla. May 2, 2017); (cv Dkt. 6-2 at 24-25).

927, 929-30 (11th Cir. 2010).

*Equitable Tolling*

Franco has not shown that tolling the limitation period is warranted. Equitable tolling is an "extraordinary" remedy "limited to rare and exceptional circumstances and typically applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (internal quotation marks and citation omitted). Franco must show that (1) he has been pursuing his rights diligently, and (2) an extraordinary circumstance prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner," and "[m]ere conclusory allegations are insufficient to raise the issue." *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011) (citations omitted).

Franco has not shown that he has been diligently pursuing his rights or that an extraordinary circumstance prevented his timely filing. He contends that equitable tolling is warranted based on "attorney abandonment and Covid-19 restrictions preventing access to resources." (cv Dkt. 1 at 10); (cv Dkt. 2 at 3-4). However, judgment was entered in March 2017, and Franco does not adequately explain why he could not file the motion prior to the imposition of any restrictions or November 24, 2020. In any event, the Eleventh Circuit has held that prison lockdowns and restricted access to a law library or legal documents do not constitute extraordinary circumstances to warrant equitable tolling. *See Castillo v. United States*, No. 16-17028-E, 2017 WL 5591797, at *3 (11th Cir. May 4, 2017) (collecting cases); *Akins v. United States*, 204 F.3d 1086, 1089-90 (11th Cir. 2000); *Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007).[5]

---

[5] Specifically, courts have declined to grant equitable tolling based on prison lockdowns due to Covid-19. *See, e.g., Moreno v. United States*, No. 1:17-CR-0446-TCB-RGV-1, 2020 WL 7091088, at *2 (N.D. Ga. Sept. 18, 2020), *report and recommendation adopted*, 2020 WL 5939887 (N.D. Ga. Oct. 7, 2020) (noting that the petitioner

6

Second, notwithstanding his conclusory allegations that counsel abandoned him, Franco has not established "attorney abandonment" of the attorney-client relationship or another extraordinary circumstance preventing timely filing. *See Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1227 (11th Cir. 2017); *see also Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1071 (11th Cir. 2011) (finding no equitable tolling where petitioner's allegations as to attorney representation constituted "garden variety negligence or neglect"). He asserts that he "never received any documents from counsel and believed his case was subject to further proceedings," that following his sentencing "he has not seen or heard from counsel all the while believing his case was ongoing," and that he "made every effort to inquire into the status of his case without success, approaching anyone who would listen to seek assistance with his case."[6] (cv Dkt. 2 at 3-4). However, Franco does not provide any basis for his belief that his case was "subject to further proceedings" or "ongoing." For example, he does not allege that counsel said an appeal would be filed or that he ever requested an appeal, despite being advised at sentencing that he had 14 days to appeal. (cv Dkt. 6-2 at 24-25). Further, he does not provide details as to the steps he took over the three years following his sentencing to "inquire into the status of his case" or to contact counsel.

Additionally, although Franco asserts that he "does not speak English," "only attended school for four years until he was twelve," "barely reads Spanish," and is "devoid of a formal

---

"does not allege when the prison's law library was initially closed, nor has he explained why he could not have filed his motion before Covid-19 restrictions were in place. In fact, [he] states that the law library is 'still closed,' and he has filed this motion without access to it"); *United States v. Henry*, No. 2:20-cv-01821, 2020 WL 7332657, at *3-5 (W.D. Penn. Dec. 14, 2020); *United States v. Thomas*, No. 18-135, 2020 WL 7229705, at *2-3 (E.D. La. Dec. 8, 2020).

[6] Counsel avers that after Franco's sentencing he "traveled to and visited [him] . . . at the Pinellas County Jail to discuss with him his continuing cooperation and to specifically discuss with [him] his right to appeal and his previous waiver of that right by way of his plea agreement," and that Franco "agreed that he did not want to file an appeal." (cv Dkt. 6-3 ¶ 8). To the extent this presents a factual dispute with Franco's allegations, the dispute is immaterial to the resolution of the motion.

7

education," ignorance of the law or procedure does not constitute an extraordinary circumstance. *See* (cv Dkt. 2 at 3); *Johnson v. United States*, 544 U.S. 295, 311 (2005); *see also Perez v. Florida*, 519 F. App'x 995, 997 (11th Cir. 2013) ("An inability to understand English does not constitute extraordinary circumstances justifying equitable tolling. Furthermore, we have not accepted a lack of a legal education and related confusion or ignorance about the law as excuses for a failure to file in a timely fashion.").

Last, Franco has not shown that he exercised diligence in pursuing his rights. As noted, notwithstanding his assertions that he "made every effort to inquire into the status of his case without success, approaching anyone who would listen to seek assistance with his case," he does not provide details as to the steps he took over the three years following his sentencing to "inquire into the status of his case" or to contact counsel. (cv Dkt. 2 at 4). Further, he notes that on October 4, 2020, he "received a copy of his docket summary sheet . . . thereby providing some insight into his circumstances." (Id.); *see* (cr Dkts. 102, 103). However, he does not explain why he could not file his motion prior to obtaining the docket summary sheet or, after obtaining the docket summary sheet on October 4, 2020, before November 24, 2020. In summary, Franco's allegations do not support a finding of equitable tolling. Even if the claims are timely, they are without merit.

***Ground One***

In Ground One, Franco raises several claims of ineffective assistance of counsel. (cv Dkt. at 1 at 4); *see also* (cv Dkt. 2 at 5-7). He contends that

> counsel was ineffective because he did not challenge the indictment's failure to charge an offense that implicated the district court's jurisdiction, or collect exculpatory evidence in the form of GPS logs and other material to confirm location and ships registry etc.. All of which would have assisted in challenging jurisdiction, instead counsel coerced his client to sign an unfavourable plea agreement without appropriate rewards and protections.

8

> Counsel had made claims to Franco his sentence would be far less than that which he received, and yet he failed to file a notice of appeal.

(cv Dkt. 2 at 7). He further explains that he "was arrested in alleged International waters despite which his attorney refused to challenge the Government's claims as to where he was actually apprehended. Franco protested to Counsel that the Government's claims were false as to origin and destination of his trip, and yet counsel refused to act. Specifically counsel should have filed a Fed. R. Crim. Proc. Rule 12b motion to challenge jurisdiction, but failed to do so." (Id. at 6).

First, as to Franco's jurisdictional challenge, under the Maritime Drug Law Enforcement Act, it is unlawful for any person on board a "covered vessel" to conspire to possess with the intent to distribute and to distribute a controlled substance. 46 U.S.C. §§ 70503(a), 70506(a) and (b).[7] The factual basis in Franco's plea agreement reflected that he was found in a vessel carrying cocaine in international waters. (cr Dkt. 38 at 18); *see also United States v. Iguaran*, 821 F.3d 1335, 1337 (11th Cir. 2016) (noting that parties may "stipulate to facts that bear on [the] jurisdictional inquiry"); *United States v. Davila-Mendoza*, 972 F.3d 1264, 1268-69 (11th Cir. 2020) (distinguishing between conduct in foreign territorial and international waters). Although a claim of Colombian nationality was made for the vessel, the Colombian government could neither confirm nor deny nationality of the vessel. (cr Dkt. 38 at 18); *see also* (cr Dkt. 33). Accordingly, the stipulated facts establish that Franco committed the offense on board a "covered vessel," and because the indictment charged him with a violation of a law of the United States, the district court

---

[7] Covered vessels include "a vessel of the United States or a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(e). A vessel subject to the jurisdiction of the United States includes a "vessel without nationality," meaning a "vessel aboard which the master . . . makes a claim of registry that is denied by the nation whose registry is claimed" or "for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." § 70502(c), (d). "If, after a claim of registry is made, a foreign nation responds that it can neither confirm nor deny the registry of that vessel, then that vessel is subject to United States jurisdiction as a vessel without nationality." *United States v. Bautista Ortiz*, 808 F. App'x 984, 986 (11th Cir. 2020).

9

had jurisdiction over the offense. (cr Dkt. 1); *Alikhani v. United States*, 200 F.3d 732, 734-35 (11th Cir. 2000). And counsel is not ineffective in failing to raise an argument that has no legal basis. *See Freeman v. Att'y Gen., State of Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008).

Franco's contention that counsel was ineffective in failing to "collect exculpatory evidence in the form of GPS logs and other material to confirm location and ships registry" is likewise without merit. (cv Dkt. 2 at 7). First, by pleading guilty, Franco waived claims of pre-plea ineffective assistance of counsel. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Further, he has not shown that additional evidence would have demonstrated that the vessel was not in international waters or that the vessel was not a "covered vessel" based on its registry.[8] *Cf. Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) ("In a habeas petition alleging ineffective assistance of counsel, mere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof."). And as noted, Franco stipulated that the vessel was found in international waters. (cr Dkt. 38 at 18).

Additionally, Franco's claim that counsel "coerced [him] to sign an unfavourable plea agreement without appropriate rewards and protections" does not entitle him to relief. (cv Dkt. 2 at 7). First, the allegation of coercion is conclusory, unsupported, and belied by the record. *See*

---

[8] As to counsel's purported failure to investigate, the Supreme Court has explained,

> strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003).

*Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that conclusory, unsupported allegations are insufficient). Indeed, "[t]here is a strong presumption that statements made during the plea colloquy are true," and Franco "bears a heavy burden to show that his statements under oath were false." *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007). Franco confirmed at his change of plea hearing that he was satisfied with counsel's representation, that no one forced or threatened him to plead guilty, and that, "outside of what is in [the] plea agreement" no one promised him anything else of value to plead guilty. (cr Dkt. 109 at 12-13, 23-24); *see also United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984) ("When a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel.").

As to Franco's contention that counsel told him he would receive a "far less [sentence] than that which he received," counsel's performance was not deficient in incorrectly predicting the imposed sentence where, as here, the plea colloquy demonstrates that he was informed of the possible sentence. *See* (cv Dkt. 2 at 7); *Langford v. United States*, No. CIV.A09-251WS-M, 2009 WL 6467043, at *9 (S.D. Ala. Oct. 23, 2009), *report and recommendation adopted*, 2010 WL 1949480 (S.D. Ala. May 12, 2010) (citations omitted) ("[A] claim of ineffective assistance of counsel is not supported by a misjudgment in sentence length."); *see also United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (affirming the denial of the defendant's motion to withdraw his guilty plea where, although counsel incorrectly predicted the sentence, the defendant was informed of the possible sentence during the plea colloquy); *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir. 1975) ("[A] good faith but erroneous prediction of a sentence by a defendant's counsel does not render the guilty plea involuntary."). Franco was advised that he faced life

11

imprisonment, that the Court could "depart or vary above and beyond" the advisory sentencing guidelines range, and that "should any recommendations be rejected [he] will not be permitted to withdraw from [his] plea pursuant to the plea agreement." (cr Dkt. 109 at 20, 22-25, 28).

Similarly, to the extent Franco challenges the validity of his guilty plea, the record, specifically his change of plea hearing, reflects that he entered his guilty plea knowingly and voluntarily.[9] His guilty plea was accepted as knowingly and voluntarily entered, and he did not object to the Magistrate Judge's report and recommendation concerning his guilty plea. *See* (cr Dkts. 44, 56); *United States v. Barefoot*, 342 F. App'x 480, 484 (11th Cir. 2009) (finding challenge to guilty plea waived by failure to object to report and recommendation). As to prejudice, he has not alleged or demonstrated that, absent any deficient performance, he would not have pleaded guilty. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1219-20 (11th Cir. 2014).

Further, notwithstanding his assertions that the plea agreement was "unfavourable without appropriate rewards and protections," Franco faced a possible term of life imprisonment on Count One, and his plea agreement required the United States to move to dismiss Count Two, agree to

---

[9] Rule 11, Fed. R. Crim. P., "imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea" by addressing three core concerns: (1) the guilty plea must be free of coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Gandy*, 710 F.3d 1234, 1240 (11th Cir. 2013) (citations omitted). Franco's plea colloquy satisfied Rule 11. As noted, he confirmed that an interpreter assisted him in communicating with counsel, that the charges were translated for him and he fully understood them, and that he had an opportunity to review the case and evidence with counsel. (cr Dkt. 109 at 7-8, 12-13). He expressed satisfaction with counsel's representation. (Id. at 12-13). He further understood the penalties he faced, that the sentencing guidelines were advisory, that the plea agreement's provision relating to substantial assistance did not bind the Court, and that by pleading guilty he was waiving certain rights, including his right to a jury trial and, subject to limited exceptions, file an appeal. (Id. at 14-25, 28-30).

To the extent Franco challenges the validity of his appeal waiver, his claim is without merit since he agreed to the provision knowingly and voluntarily in his plea agreement and during his change of plea hearing. *See United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) ("The waiver is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver."); (cr Dkt. 38 at 15-16); (cr Dkt. 109 at 20-21).

not bring additional charges, recommend a sentence within the guidelines range, and not oppose a sentence at the low end of the range. (cr Dkt. 38 at 3-4); (cv Dkt. 2 at 7). He further received a three-level reduction for acceptance of responsibility and, despite his assertions that counsel "failed to secure Franco his rights to post conviction relief through the Government's filing of a Rule 35 motion," a two-level downward departure for his substantial assistance. (cr Dkt. 69 ¶¶ 21-31); (cr Dkts. 71, 80); (cv Dkt. 6-2 at 21); (cv Dkt. 2 at 6-7).[10]

As to counsel's purported failure to file a notice of appeal, an attorney's failure to file a notice of appeal if requested by a defendant constitutes deficient performance. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). If a defendant does not instruct counsel to file an appeal or ask that an appeal not be taken, a court must determine whether counsel "consulted" with the defendant about an appeal, which means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. Counsel has a duty to consult "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that

---

[10] Franco further asserts that "[c]ounsel advised Franco to freely proffer for the Government, however, counsel failed to execute a formal cooperation agreement or seek a Kastinger letter on Franco's behalf." (cv Dkt. 2 at 6). However, his plea agreement included provisions relating to cooperation. (cr Dkt. 38 at 5-9). And he does not explain how counsel's failure to "seek a Kastinger letter" entitles him to relief. *See Tejada*, 941 F.2d at 1559 (noting that conclusory, unsupported allegations are insufficient); *United States v. Hill*, 643 F.3d 807, 877 (11th Cir. 2011) (explaining grounds for a *Kastigar* challenge).

To the extent Franco raises a claim based on the United States' failure to file an additional motion for a sentence reduction following sentencing, even if the claim is cognizable and not defaulted, it is without merit. *See* (cv Dkt. 2 at 6-7). Indeed, a reduction under Rule 35(b), Fed. R. Crim. P., cannot be granted absent a motion by the United States. *See United States v. Howard*, 902 F.2d 894, 897 (11th Cir. 1990). As Franco acknowledged in his plea agreement and at his change of plea hearing, "the determination as to whether 'substantial assistance' has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise." (cr Dkt. 38 at 6); (cr Dkt. 109 at 22-23). And he has not alleged a constitutionally impermissible motivation for the failure to file a motion. *See United States v. Ramos-Yanac*, 454 F. App'x 705, 706 (11th Cir. 2011).

this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. Relevant factors include whether the defendant pleaded guilty, received the sentence he bargained for, or waived his appellate rights. *Id.*

Franco has not shown that counsel's performance was deficient. First, he does not allege that he requested counsel to file a notice of appeal. *See* (cv Dkt. 2 at 7). Second, he has not shown that a rational defendant would have wanted to appeal or that he reasonably demonstrated to counsel that he was interested in appealing. As noted, he pleaded guilty and received a three-level reduction for acceptance of responsibility, a two-level downward departure for substantial assistance, and a sentence at the low end of his guidelines range. Last, subject to limited exceptions, he waived his right to appeal, and he does not provide any nonfrivolous grounds for an appeal. *See, e.g., Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008) (finding that a rational defendant would not want to appeal where there were no nonfrivolous grounds for appeal, he pleaded guilty, and he waived his right to appeal).

Even if a rational defendant would have wanted to appeal or Franco reasonably demonstrated to counsel that he was interested in appealing, he does not allege that counsel failed to advise him "about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover [his] wishes." *Flores-Ortega*, 528 U.S. at 478.[11] In summary, he has

---

[11] Counsel avers that, following Franco's sentencing, he

> traveled to and visited [Franco] . . . at the Pinellas County Jail to discuss with him his continuing cooperation and to specifically discuss with [him] his right to appeal and his previous waiver of that right by way of his plea agreement. In addition, [counsel] specifically discussed with [Franco] that an appeal of his sentence would likely fail and that such an appeal could jeopardize his chances for a motion from the government for a reduction pursuant to Federal Rule of Criminal Procedure 35(b) in the future. This was not the first time [counsel] had spoken with [Franco] regarding these matters and [Franco] understood well what he was doing and readily agreed that he did not want to file an appeal.

14

not established that counsel rendered deficient performance, and this ineffective assistance of counsel claim fails.

**Ground Two**

Franco asserts that "[t]his ground encompasses both ineffective assistance of counsel and [his] right to counsel as afforded by the Sixth Amendment." (cv Dkt. 2 at 8). He explains that when he

> landed in Tampa he was provided with a hot meal and ushered to a meeting with three Federal agents/officers. [He] was not provided with an attorney or to his knowledge apprised with the right to an attorney. Franco did not knowingly waive his rights to an attorney. The Government agents explained whoever of he and his cohorts was the first to tell them what they wanted to know whould [sic] get the benefit of what Franco later learned was a 5K.1 filing.
>
> Some weeks later Franco and his appointed attorney met with another Federal agent. After the meeting commenced counsel simply left the interview leaving Franco without any support or assistance.
>
> The Government violated Franco's right to an attorney and limited his ability to bargain for a better sentence. Counsel failed to address the Government's interview of Franco and it is unclear if the Government committed a *Brady* violation and what they ultimately shared as discovery with counsel. Subsequently Counsel encouraged Franco to speak freely with prosecutors at all other meetings. It is hard to imagine Franco was not prejudiced by his candor particularly when counsel wasn't present at interviews.
>
> The Government claims Franco was arrested on September 26, 2016 before the Court and appointed counsel that same day. These claims raise three questions, 1) At what point was Franco read his rights if at all? 2) Where he was transported by boat for 15 days before his arrival in Tampa, was he

---

(cv Dkt. 6-3 ¶ 8). Further, consistent with the Court's order for counsel to "document [Franco's decision whether to appeal] either by filing a notice of appeal or confirming in writing with [him] that [he has] decided not to appeal," counsel has provided his contemporaneous notes reflecting that on March 24, 2017, he discussed with Franco his appellate rights and that Franco said he did not want to appeal. (Id. ¶ 9); (cv Dkt. 6-4); (cv Dkt. 6-2 at 25). To the extent counsel's averments create a factual dispute, the dispute is immaterial to the resolution of Franco's motion.

15

credited for that period of time towards his incarceration? And 3) If he was not "arrested", what was his status?

(cv Dkt. 9 at 8-9 (citations omitted)). His contentions are without merit.

First, as the United States correctly contends, Franco's claims that are not based on ineffective assistance of counsel are procedurally defaulted, and he has not shown cause and prejudice to excuse the default. (cv Dkt. 6 at 11 n.5); *Hill v. United States*, 569 F. App'x 646, 648 (11th Cir. 2014). Second, to the extent he claims that his statements were obtained in violation of his constitutional rights, the claim and any related ineffective assistance of counsel claims were waived by his guilty plea. *See Wilson*, 962 F.2d at 997; *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979) (noting that entry of a guilty plea waives "claims regarding *Miranda* warnings, coerced confessions"). At his change of plea hearing, Franco acknowledged that he was "waiving any objections" "as to how the evidence was gathered in [his] case." (cr Dkt. 109 at 30-31). Additionally, he does not specify the basis of his contention that the United States "committed a *Brady* violation and what they ultimately shared as discovery with counsel."[12] (cv Dkt. 9 at 8). Even if the claim is not waived, Franco acknowledged at his change of plea hearing that he had an opportunity to review with counsel all the facts and evidence in the case, and he points to no material that was not produced during discovery. (cr Dkt. 109 at 12). Further, any related ineffective assistance of counsel claims are waived and, absent deficient performance and prejudice resulting from the claimed deficient performance, without merit.[13]

---

[12] *See Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. McCoy*, 636 F. App'x 996, 999 (11th Cir. 2016) (leaving open question of whether a guilty plea waives a *Brady* claim).

[13] Counsel avers that, contrary to Franco's allegations, he "was present for the two hours that the proffer [with case agents] lasted and he billed for the same." (cv Dkt. 6-3 ¶ 15). To the extent counsel's averments create a factual dispute, the dispute is immaterial to the resolution of Franco's motion.

Last, Franco's claims relating to his arrest "status" and the crediting of time "towards his incarceration" are not cognizable in this § 2255 proceeding. *See United States v. Rainey*, 537 F. App'x 836, 838 (11th Cir. 2013). In any event, he has not shown that he is entitled to relief.

### *Certificate of Appealability ("COA")*

A COA may issue on "a substantial showing of the denial of a constitutional right," which requires Franco to demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citations omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (discussing standard for procedural rulings). I find that jurists of reason could not disagree with the resolution of Franco's constitutional claims or the procedural rulings, or conclude that the issues presented are adequate to deserve encouragement to proceed further. Because he has not met the required standard, he is not entitled to a COA and cannot appeal *in forma pauperis*.

### CONCLUSION

Petitioner Franco's § 2255 motion is untimely and without merit. Accordingly, the motion is **DENIED**. (cv Dkt. 1). The Clerk is directed to enter judgment in the United States' favor and against Franco, and to **CLOSE** this case.

**DONE AND ORDERED** this 20th day of April, 2021.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Petitioner, Counsel of Record